UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------ X
BILLY MITCHELL,                                          :

              Plaintiff,                             :

           -against-                               :
                                                        3:15-cv-05668 (AET) (LHG)
THE CARTOON NETWORK, INC., a     :
New York Corp., CARTOON                  Hearing:  November 16, 2015
NETWORK STUDIOS, INC., a          :              10:00 A.M.
Georgia Corporation, TURNER                      Courtroom 4W
BROADCASTING SYSTEM, INC., a     :
Georgia Corporation, John Does 1
through 10, fictitious designations,        :

           Defendants.                            :
------------------------------------------------ X


## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE


LOEB & LOEB LLP
Jonathan Neil Strauss (JS1090)
Christian D. Carbone (*admitted pro hac vice*)
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000

*Attorneys for Defendants The Cartoon Network, Inc., Cartoon Network Studios, Inc. and Turner Broadcasting System, Inc.*

# TABLE OF CONTENTS

**<u>Page</u>**

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT ...................................................................................................... 2

    I.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE HE FAILS TO STATE A CLAIM AS A MATTER OF LAW .......................................................................... 2

        A.    Plaintiff Does Not, and Cannot, Refute that the Court Can Dismiss His Claims Based on Its Review of the Relevant Works ..................................................... 2

        B.    Plaintiff's Claims are Barred by the First Amendment ........... 4

    II.    IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA .................................................................... 8

        A.    Venue is Improper Because No Parties Reside in New Jersey, and No Substantial Part of the Underlying Events Occurred in New Jersey ............................... 9

        B.    Even if Venue is Not Improper, This Case Should be Transferred Pursuant to 28 U.S.C. § 1404(a) Because the Parties and the Dispute Have No Connection to New Jersey ............................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bockman v. First. Am. Mktg. Corp.*,
  459 F. App'x 157 (3d Cir. 2012) ........................................................................... 9

*Boppy Co. v. Luvee Prods., Corp.*,
  2004 U.S. Dist. LEXIS 26475 (D. Colo. May 22, 2004) .................................. 11

*Brownmark Films, LLC v. Comedy Partners*,
  682 F.3d 687 (7th Cir. 2012) ............................................................................... 4

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) .............................................................................................. 7

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*,
  95 F.3d 959 (10th Cir. 1996) ............................................................................... 7

*Cariou v. Prince*,
  714 F.3d 694 (2d Cir. 2013) ................................................................................ 4

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
  25 Cal. 4th 387 (Cal. 2001) ........................................................................... 5, 6

*Dowling v. Philadelphia*,
  855 F.2d 136 (3d Cir. 1988) ................................................................................ 4

*Hart v. Electronic Arts*,
  717 F.3d 141 (3d Cir. 2013) ..................................................................... 5, 6, 7, 8

*Hershey Co. v. Pagosa Candy Co.*,
  2008 U.S. Dist. LEXIS 29410 (M.D. Pa. Apr. 10, 2008) ................................. 11

*High Maint. Bitch, LLC v. Uptown Dog Club, Inc.*,
  2007 U.S. Dist. LEXIS 82456 (W.D. Wash. Oct. 17, 2007) ............................. 11

*Lindgregn v. GDT, LLC*,
  312 F. Supp. 2d 1125 (S.D. Iowa 2004) ............................................................ 11

*Lodge v. Mayline Co.*,
  2010 U.S. Dist. LEXIS 123483 (D.N.J. Nov. 19, 2010) .................................. 14

*Love v. Associated Newspapers*,
611 F.3d 601 (9th Cir. 2010) .............................................................................. 12

*No Doubt v. Activision Publishing, Inc.*,
192 Cal. App. 4th 1018 (Cal. 2011) ............................................................... 6, 7

*Shamsuddin v. Vitamin Research Prods.*,
346 F. Supp. 2d 804 (D. Md. 2004) ................................................................. 11

*Shore Slurry Seal v. CMI Corp.*,
964 F. Supp. 152 (D.N.J. 1997).................................................................... 13-14

*Swarovski Optik N. Am. Ltd. v. Euro Optics, Inc.*,
2003 U.S. Dist. LEXIS 14881 (D.R.I. Aug. 25, 2003)...................................... 11

*Tristar Prods., Inc. v. SAS Grp., Inc.*,
2009 U.S. Dist. LEXIS 94592 (D.N.J. Oct. 9, 2009) ................................. 10, 12

*Virag, S.R.L. v. Sony Computer Entm't Am. LLC*,
2015 U.S. Dist. LEXIS 39910 (D.N.J. Mar. 30, 2015) ............................... 14-15

*Winter v. DC Comics*,
30 Cal 4th 881 (Cal. 2003) ........................................................................ 5, 6, 7

*Xactware, Inc. v. Symbility Solution Inc.*,
402 F. Supp. 2d 1359 (D. Utah 2005) .............................................................. 11

**Statutes**

28 U.S.C. § 1391(b)(1) ........................................................................................ 11

28 U.S.C. § 1404(a) ............................................................................................. 12

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Billy Mitchell is *not* a giant, disembodied floating head from outer space, does *not* lead an army of undead zombies, living hot-dogs, and a sunglasses-wearing cassette tape into apocalyptic battle with an anthropomorphic blue jay and raccoon and their allies, including a living gumball machine and a man with a lollipop for a head, and does *not* explode into brain goo when defeated. It is thus abundantly clear, based on a cursory review of *The Regular Show* episodes incorporated by reference in the Complaint, that the parodic GBF character—which is and does all of those things—is precisely the type of transformative, expressive use of a celebrity's persona that is protected by the First Amendment.

Unable to refute this obvious truth, Plaintiff simply cuts and pastes lengthy block quotes from various cases, with no explanation of how these passages save his case from dismissal. Plaintiff also conclusorily asserts that he is entitled to "discovery and depositions," but does not even address, let alone refute, the numerous cases cited in Defendants' opening brief, holding that "transformativeness" can and should be determined as a matter of law, based on a review of the subject works. No amount of discovery can change the episodes themselves, and Plaintiff does not, and cannot set forth a single fact that he could conceivably learn in discovery that could possibly suggest that the GBF character is not "transformative."

For Plaintiff to prevail in this action would require the Court to hold that it is impermissible for a fictional television show to parody, lampoon or criticize a real-

life individual.  This is obviously not the law.  Plaintiff's claims should, therefore, be dismissed immediately.

If not dismissed, this action should, at a minimum, be transferred.  In their opening brief, Defendants explained that neither the parties nor the case have any connection to New Jersey, except that *The Regular Show* aired in New Jersey—along with every other state in the country.  In his opposition, Plaintiff relies on the fact that a website allows consumers in New Jersey to purchase *The Regular Show* products over the Internet, but again, the same is true for *every other state*, and New Jersey has no greater connection to this action than every other state in the country—and far less of a connection than California, the state where GBF was conceived and created.  Plaintiff's transparent attempt at forum-shopping, based on an ill-conceived belief that his claims stand a better chance at surviving a motion to dismiss in New Jersey, should be rejected.

## **ARGUMENT**

### I.  **PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE HE FAILS TO STATE A CLAIM AS A MATTER OF LAW**

#### A. **Plaintiff Does Not, and Cannot, Refute that the Court Can Dismiss His Claims Based on Its Review of the Relevant Works**

In their opening brief ("Def. Br."), Defendants[1] explained that, when faced with a claim that a defendant's audiovisual, literary, musical and expressive works somehow infringe a plaintiff's rights, courts in this Circuit regularly examine the

---

[1]  Defined terms from Defendants opening memorandum of law (Dkt. No. 9) are incorporated by reference herein.

subject works as documents incorporated by reference in the Complaint, and dismiss the complaint when such review demonstrates that the plaintiff cannot state a claim as a matter of law. (Def. Br. at 15-16). Further, courts throughout the country do not hesitate to determine the issue of "transformativeness"—which is at the heart of this action—based on nothing more than a review of the subject works, and to dismiss claims as a matter of law when the requisite transformativeness is plain from such review. (*Id.* at 17-18). Plaintiff does not, and cannot, even attempt to refute this showing, and does not cite a *single case* suggesting that it is improper to resolve the issue of "transformativeness" based on review of *The Regular Show* episodes, which were incorporated by reference in the Complaint.

Nevertheless, Plaintiff asserts, in conclusory fashion and without citing a single case in support, that a motion to dismiss is "premature" and that he is entitled to "discovery and depositions[] to allow the Plaintiff to explore what efforts, if any, were made by the Defendants and the creators of the Regular Show to transform Mr. Mitchell's direct likeness." (Pl. Br. at 20).[2] But as explained at length in Defendants' opening brief, the transformative nature of the GBF character—a giant floating head from outer space that does apocalyptic battle with anthropomorphic animals—is apparent upon cursory review of the episodes themselves. No amount of discovery

---

[2] References to "Plaintiff's Brief" or "Pl. Br." are to Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss or, in the Alternative, Transfer Venue (Dkt. No. 13).

can change the episodes, which are conclusive.[3]  Indeed, Plaintiff does not, and cannot, identify a single fact that he could conceivably learn in discovery that could show GBF to be a literal, rather than transformative, depiction of Billy Mitchell.[4]

As explained in Defendants' opening brief, and unrefuted by Plaintiff,  "speedy resolution of [right of publicity] cases involving free speech" is particularly desirable in order to avoid unnecessarily protracted litigation, and because courts can often resolve these claims as a matter of law "simply by viewing the work in question and … comparing it to an actual likeness of the person … portrayed."  (Def. Br. at 18-19) (citations omitted).  There is no need for burdensome, wasteful discovery here.  This is not a close call.  A simple review of *The Regular Show* episodes demonstrates that Plaintiff's claim must be dismissed.

### B.  Plaintiff's Claims are Barred by the First Amendment

Plaintiff completely fails to refute that the GBF character is plainly a transformative, not literal, depiction of Mitchell, and thus his claims are barred by the

---

[3] The testimony of the creators of *The Regular Show* is particularly irrelevant given that transformativeness turns on how works may "reasonably be perceived," not the intentions of their creators.  (Def. Br. at 27-28).  *See, e.g., Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013) ("Rather than confining our inquiry to [defendant's] explanations of his artworks, we instead examine how the artworks may 'reasonably be perceived' in order to assess their transformative nature.") (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 582 (1994)); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 692-93 (7th Cir. 2012) ("When a defendant raises a fair use defense claiming his or her work is a parody, a court can often decide the merits of the claim without discovery or a trial.").

[4] *Cf. Dowling v. Philadelphia*, 855 F.2d 136, 139-40 (3d Cir. 1988) (party seeking discovery must submit affidavit specifying "what particular information is sought [and] how, if uncovered, it would preclude summary judgment").

First Amendment.  (Def. Br. at 20-30).  In fact, in his opposition, Plaintiff does little more than cut and paste lengthy block quotes from *Hart v. Electronic Arts*, 717 F.3d 141 (3d Cir. 2013) and a few other cases, with no explanation or analysis of how these passages support his claims.  (*See* Pl. Br. at 16-25).  To the extent that Plaintiff does offer actual arguments, they are entirely conclusory, and are contradicted by the very cases on which Plaintiff relies.

For example, in their opening brief, Defendants explained that this case is on all fours with the California Supreme Court's decision in *Winter v. DC Comics*, 30 Cal 4th 881 (Cal. 2003), in which the defendants similarly lampooned plaintiffs by depicting them as monstrous figures in a larger fictional story.  (Def. Br. at 24-26). Plaintiff now conclusorily asserts, with no explanation, that "Billy Mitchell's claims against the various Defendants asserts facts which lie somewhere between the Comedy III case and Winter cases cited in Hart, supra" (Pl. Br. at 22), but Plaintiff does not, and cannot, set forth a single fact that distinguishes this case from *Winter* in any way.[5]  Nor are there any similarities between this case and *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387 (Cal. 2001), beyond that they both involve right of publicity claims.  *Comedy III* did not involve a distorted image of a celebrity appearing as a character in a larger, fictional story; rather, it involved literal, realistic depictions of celebrities (the Three Stooges) that were printed on T-shirts:

---

[5] To the extent there are any differences between this case and *Winter*, the use at issue here is even *more* transformative than in *Winter* because the GBF character actually comments on and criticizes the celebrity from which it is drawn.  (Def. Br. at 26-28).



*See Comedy III*, 25 Cal. 4th at 393, 411; *Hart*, 717 F.3d at 161 (stating that *Comedy III* "presents a clear example of a non-transformative use … i.e., mere literal depictions of celebrities recreated in a different medium…."). Placing realistic depictions of celebrities on merchandise is a paradigmatic right of publicity violation. But it has no resemblance to the facts of this case.

Plaintiff also claims, again without an iota of analysis or explanation, that "this case … is more akin to the case of No Doubt v. Activision Publishing, Inc., 192 Cal. App. 4th 1018 [(Cal. 2011)]" (Pl. Br. at 22), but again, there is no resemblance between *No Doubt* and the facts of this case. *No Doubt* centered around a video game that allowed players to "simulate performing in a rock band in time with popular songs" by selecting digital avatars to represent them in an in-game band. *Id.* at 1023. Some of the avatars were "literal reproductions" of members of the band No Doubt, "painstakingly designed to mimic their likenesses." *Id.* at 1033. Unlike in *Winter*, and the present case, the digital avatars did not appear in the context of a larger, fictional storyline, and defendants did not distort the band members' images

"for purposes of lampoon, parody or caricature."  (*See supra* at 5; Def. Br. at 24).

Thus, the *No Doubt* court expressly distinguished *Winter*, stating:

> [Defendant] intentionally used these literal reproductions so that players could choose to "be" the No Doubt rock stars…. [T]hey remain at all times immutable images of the real celebrity musicians, in stark contrast to the "fanciful, creative characters" in *Winter* ….

192 Cal. App. 4th at 1033.  Rather than resembling *Winter*, or the present case, the facts of *No Doubt*, with its highly realistic, digital video-game avatars, closely resemble those of *Hart*—which is completely inapposite, as explained at pages 28-29 of Defendants' opening brief.

To the extent Plaintiff intends to argue that GBF is actually a literal, realistic depiction of Plaintiff (*see* Pl. Br. at 24 ("[A] strong argument can be made that the GBF character closely resembles the genuine article known as Billy Mitchell.")), this is absurd, and is refuted by a cursory review of the subject works.  Simply put,

this  is not this  .[6]  In any case, as explained

---

[6] Of course there is some resemblance between Plaintiff and GBF.  Such is the nature of a parody.  *See Campbell*, 510 U.S. at 588 ("[T]he parody must be able to 'conjure up' at least enough of [the] original to make the object of its critical wit recognizable."); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 968, 972-73 (10th Cir. 1996) (finding that parodic baseball trading cards are protected by First Amendment, and stating that "[t]here is little question that Cardtoons knowingly uses the names and likenesses of major league baseball players….Indeed, the caricatures are only humorous because they, along with the parodied name, team, and commentary, are accurate enough to allow identification of the players being parodied.").

in Defendants' opening brief,  courts have repeatedly rejected right of publicity claims involving even realistic depictions of real-life individuals in films, television shows and other fictional works.  (Def. Br. at 22-23, 29-30).  Plaintiff does not, and cannot, cite a *single case* holding that the depiction of a celebrity as a character in a fictional television show or similar work violates the right of publicity.

Nor does Plaintiff respond to Defendants' showing that the GBF character is, on its face, a transformative *parody*, which comments on and criticizes various of Mitchell's perceived characteristics.  (Def. Br. at 26-28).  Plaintiff does not, and cannot, dispute that such a parody is transformative, as a matter of law.  And as for Plaintiff's complaint that this parody is "disparaging" and places him "in a very unfavorable light" (Pl. Br. at 3), Plaintiff's hurt feelings do not trump the First Amendment.  *See Hart*, 717 F.3d at 154 n.16, 159 ("[T]he right of publicity cannot, consistent with the *First Amendment*, be a right to control the celebrity's image by censoring disagreeable portrayals," and "does not confer a shield to ward off caricature, parody and satire.") (quotations omitted).

## II.    IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA

While Plaintiff's Complaint should be dismissed as barred by the First Amendment, Plaintiff also fails to refute that this case has no conceivable connection to this forum, and that, if not dismissed outright, this action should be transferred to the Central District of California, where the acts giving rise to this case took place.

At the outset, Plaintiff completely misstates the law when he claims that the Court should "accept[] the allegations in the pleadings as true" for purposes of deciding venue. (Pl. Br. at 4-5). The actual rule, which is clearly stated in the very cases that Plaintiff cites, is that a plaintiff's venue allegations are accepted as true **"<u>unless those allegations are contradicted by the defendant's affidavits.</u>"** *Bockman v. First. Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012) (emphasis added). Defendants have submitted a sworn declaration demonstrating that they lack any connection to the state of New Jersey, and that CNS, Inc.—the true party in interest, which is responsible for the creation of *The Regular Show* and the GBF character—maintains its operations and all of its full-time employees in *California*. (Def. Br. at 14-15). Plaintiff's unsupported recitation of allegations made "upon information and belief"—including his completely fabricated allegation that TCN, Inc. is based in New York (Pl. Br. at 2)—do not suffice to refute Defendants' sworn statement, and, in any event, Plaintiff does not, and cannot, allege that any of the parties are New Jersey residents.

### A. Venue is Improper Because No Parties Reside in New Jersey, and No Substantial Part of the Underlying Events Occurred in New Jersey

Venue is only proper in this District if (i) <u>all</u> of the Defendants are subject to general or specific jurisdiction in New Jersey, or (ii) a "substantial part of the events" giving rise to the claim occurred in New Jersey. (Def. Br. at 31-40). In his opposition brief, Plaintiff does not appear to contend that general jurisdiction exists

over any Defendant, much less all of them.  And while Plaintiff's brief contains a heading stating that "a substantial part of the events giving rise to this claim occurred in the state of New Jersey," the section that follows merely recites a few general legal principles, but offers *no* argument or explanation for how a "substantial part of the events" occurred in this state.  (Pl. Br. at 11-12).[7]  Accordingly, Plaintiff's sole argument in support of the propriety of venue is that specific jurisdiction purportedly exists over Defendants.

Specific jurisdiction requires *both* (i) that the defendant purposefully direct its activities at the forum, and (ii) that the claim directly *arises out of* those activities. (Def. Br. at 44).  Plaintiff relies on *Tristar Prods., Inc. v. SAS Grp., Inc.*, 2009 U.S. Dist. LEXIS 94592 (D.N.J. Oct. 9, 2009), which held that "a fully interactive website that is used to conduct regular business deals with customers in a forum state does give rise to jurisdiction over claims that arise from those deals," i*d.* at *7, and argues that the mere fact that a website allows consumers in New Jersey (along with every other state) to purchase products over the Internet constitutes "purposeful direction." (Pl. Br. at 8-10).  Contrary to *Tristar*, "many cases recognize that the 'purposeful' element is not satisfied by an interactive website that is generally available to persons

---

[7] Plaintiff does not refute that the mere fact that *The Regular Show* aired in New Jersey cannot establish the necessary "substantiality," where there is nothing distinguishing New Jersey from the myriad other locations where the program aired. (Def. Br. at 39-40).  To the extent Plaintiff intends to argue that the mere fact that *The Regular Show* products could be purchased over the Internet in New Jersey—along with every other state—gives rise to the necessary substantiality (Pl. Br. at 3), such an argument fails for the same reason.

nationwide … but which does not target residents of the forum state to a degree greater than any other users." *Boppy Co. v. Luvee Prods., Corp.*, 2004 U.S. Dist. LEXIS 26475, at *14 (D. Colo. May 22, 2004).[8]  Moreover, Plaintiff's own exhibit makes plain that the website in question is operated by a third-party, Bolder Road LLC—thus, it cannot demonstrate "purposeful direction" on the part of TCN, Inc. (Dkt. No. 13-1, Ex. B p. 2).  Further, for venue to be proper, the Court must have jurisdiction over all Defendants.  28 U.S.C. § 1391(b)(1).  Plaintiff does not, and cannot, explain how a website run by a third party demonstrates "purposeful direction" by either TBS, Inc. or CNS, Inc.  For this reason alone, venue is improper.

In any event, "purposeful direction" alone does not give rise to specific jurisdiction—the claim must also arise out of the defendants' forum-related activities.

---

[8] *See also, e.g., Hershey Co. v. Pagosa Candy Co.*, 2008 U.S. Dist. LEXIS 29410, at *20-21 (M.D. Pa. Apr. 10, 2008) ("[T]hat the Pagosa web site lists Pennsylvania as one in a list of general shipping destinations, standing alone, does not demonstrate the purposeful availment of doing business in Pennsylvania."); *Swarovski Optik N. Am. Ltd. v. Euro Optics, Inc.*, 2003 U.S. Dist. LEXIS 14881, at *20-21 (D.R.I. Aug. 25, 2003) ("[T]hat Rhode Island residents 'can' order products from the site, without more, is insufficient to establish purposeful availment."); *High Maint. Bitch, LLC v. Uptown Dog Club, Inc.*, 2007 U.S. Dist. LEXIS 82456, at *8-9 (W.D. Wash. Oct. 17, 2007) ("Although Washington residents are allowed to purchase Uptown Dog products through the website, this does not establish that Uptown Dog has 'purposefully directed' its activity to Washington residents."); *Xactware, Inc. v. Symbility Solution Inc.*, 402 F. Supp. 2d 1359, 1364 (D. Utah 2005) (interactive website that allowed residents of the forum state to place orders insufficient to establish personal jurisdiction); *Shamsuddin v. Vitamin Research Prods.*, 346 F. Supp. 2d 804, 813-14 (D. Md. 2004) ("Although VRP's website has the capability of processing purchase orders from Maryland residents … these facts by themselves do not evince purposeful availment…."); *Lindgregn v. GDT, LLC*, 312 F. Supp. 2d 1125, 1131 (S.D. Iowa 2004) (Iowa's inclusion on a drop-down menu "does not demonstrate an intent to purposefully target Iowa").

While the willful sale of products into New Jersey may, in some circumstances, give rise to specific jurisdiction, such as when the plaintiff who purchases the product or is otherwise harmed thereby is a New Jersey resident, here any alleged "harm" took place in <u>Florida</u>, where Plaintiff resides.   (Def. Br. at 35-37).[9]   Plaintiff's bare assertion that he has visited New Jersey for business, and that there are "arcade business and individuals in that state" (like every state) does not change this result. *See Love v. Associated Newspapers*, 611 F.3d 601, 609 n.4 (9th Cir. 2010) (no jurisdiction in right of publicity case despite plaintiff's claim that his "musical career is based in California," where plaintiff "is a citizen not of California but of Nevada").

Nor were any hypothetical sales of *The Regular Show* products into New Jersey a "but for" cause of Plaintiff's claim—thus, specific jurisdiction cannot lie. (Def. Br. at 35-37).  Plaintiff does not cite a single case suggesting that a defendant's nationwide sale of products through an interactive website permits the plaintiff to sue in any state, even if the plaintiff  and the claim have no connection to that state.  Such a rule would encourage improper forum-shopping—which is exactly what Plaintiff attempts here.

### B. Even if Venue is Not Improper, This Case Should be Transferred Pursuant to 28 U.S.C. § 1404(a) Because the Parties and the Dispute Have No Connection to New Jersey

Plaintiff also fails to refute that, even if venue is technically permissible—and it is not—the Court should still transfer this action to the Central District of California

---

[9] In the *Tristar* case that Mitchell relies on, the plaintiff was a New Jersey resident. 2009 U.S. Dist. LEXIS 94592, at *1.

because this case has no connection to New Jersey whatsoever, and the private and public interest factors overwhelmingly favor transfer.  (Def. Br. at 40-49).

With regard to the first two private interest factors—the parties' respective choices of forum—Plaintiff merely recites the generic proposition that a plaintiff's choice of forum is typically afforded significant weight (Pl. Br. at 14), but simply ignores Defendants' showing that this is <u>not the case</u> where, as here, the plaintiff has not chosen his home forum, and his chosen forum "has little connection to the facts underlying the claim."  (Def. Br. at 42-45).  Defendants cited numerous cases, with facts remarkably similar to those at issue here, holding that, in these circumstances, the "forum preference" factors <u>favor</u> transfer.  (*Id.*).  Plaintiff does not even attempt to address or distinguish these cases, which are fatal to his forum-shopping efforts.

Plaintiff similarly ignores the third private interest factor—where the claim arose.  The reason is obvious.  Any claim arose in California, where the allegedly infringing character was conceived, and where the allegedly infringing *The Regular Show* programs were created and produced, and not New Jersey, which is just one of fifty states where the program has aired or is available for sale.  (Def. Br. at 45).

With respect to the fourth private interest factor—the convenience of the parties—Plaintiffs' claim of "financial disparity" rings hollow, given that he has already indicated a willingness and ability to litigate this action far from his home state and, by his own admission, frequently travels for business purposes.  Indeed, the very case on which Plaintiff relies, *Shore Slurry Seal v. CMI Corp.*, 964 F. Supp. 152

(D.N.J. 1997), <u>granted</u> a motion to transfer where the plaintiff "has not offered evidence that it is financially or physically unable to attend proceedings in Oklahoma." *Id.* at 157. Further, contrary to Plaintiff's unsupported—and false—claim that TCN, Inc. is based in New York, <u>all</u> of the relevant CNS, Inc. employees, witnesses and documents are based in California. (Def. Br. at 14-15). In any case, this one factor alone is not enough to defeat transfer. *See Lodge v. Mayline Co.*, 2010 U.S. Dist. LEXIS 123483, at *29 (D.N.J. Nov. 19, 2010).[10]

As for the public interest factors, the local interest in resolving local controversies at home strongly favors transfer, because California has a strong local interest in resolving this dispute, while New Jersey has none. (Def. Br. at 47-48). Plaintiff confusingly asserts that "Defendants have a very real and substantial contact with the State of New Jersey" (Pl. Br. at 15), but the only conceivable contact that Plaintiff has identified is that New Jersey, like every other state in the country, appears in a drop-down menu on a TCN, Inc. website. Even if this were enough to give rise to specific jurisdiction—and it is not—it does not weigh against transfer, as "New Jersey lacks a connection to the alleged infringement that is any more significant than the other states where that same activity also occurs." (Def. Br. at 48 (quoting *Virag, S.R.L. v. Sony Computer Entm't Am. LLC*, 2015 U.S. Dist. LEXIS

---

[10] The remaining public factors (availability of witness and location of documents) either favor transfer or, at worst, are neutral. (Def. Br. at 46-47). Plaintiff recites these factors, but does not argue that they weigh against transfer. (Pl. Br. at 14-15).

39910, at *19-20 (D.N.J. Mar. 30, 2015)).[11]

And while Plaintiff attempts to minimize California's connection to this action by asserting that "[n]one of the Defendants have … offices" there, other than artists who "happen to have a studio there" (Pl. Br. at 15), this is simply untrue.  CNS, Inc. does not simply "happen to have a studio" in California—it maintains <u>all</u> of its creative and production operations, including <u>all of its full-time employees</u> in California, and California is where the allegedly infringing program and character were created.  (Def. Br. at 14-15, 47-48).  Because "[o]f the two alternatives, solely California maintains a direct connection, and a strong interest, in this case … the public interest factors also tip the scales in favor of transfer."  *Virag, S.R.L.*, 2015 U.S. Dist. LEXIS 39910, at *20.  Finally, Plaintiff does not even attempt to respond to Defendants' showing that practical considerations relating to the litigation favor transfer.  (Def. Br. at 48-49).

Having wasted his opportunity to select an appropriate venue with this transparent attempt at forum-shopping, Plaintiff cannot now object to the action being transferred to California, a state that (unlike New Jersey), actually does have some connection to his claims.

---

[11]  Plaintiff also vaguely claims that "substantial contacts exist in the gaming community in the State of New Jersey" (Pl. Br. at 16), but fails to explain how the fact that New Jersey (like every other state) has video game arcades implicates any public interest factor or weighs against transfer.

Dated:      New York, New York
            November 9, 2015


                            LOEB & LOEB LLP


                            By:/s Jonathan Strauss
                                Jonathan Neil Strauss (JS1090)
                                Christian D. Carbone (*pro hac vice*)
                                345 Park Avenue
                                New York, New York 10154-1895
                                (212) 407-4000

                                *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of November, 2015, a true and correct copy of the foregoing document was electronically filed with the Court and, through the Court's CM/ECF system, has been served upon the following counsel of record:

*Counsel for Plaintiff:*

Robert A. Ballard, Jr.
Ballard & Dragan
Liberty Court, Suite 1200
260 Highway 202/31
Flemington, NJ 08822

/s Jonathan Strauss